Nicholas J. Santoro
(Nevada Bar No. 532)
Jason D. Smith
(Nevada Bar No. 9691)
SANTORO WHITMIRE
10100 West Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
P: (702) 948-8771
Email: nsantoro@santoronevada.com
       jsmith@santoronevada.com

Jonathan E. Moskin, Esq. (admitted *pro hac vice*)
Akiva Cohen, Esq. (admitted *pro hac vice*)
Ramy Hanna, Esq. (admitted *pro hac vice*)
Adam Pence, Esq. (admitted *pro hac vice*)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016-1314
P: (212) 682-7474
Email: jmoskin@foley.com
       acohen@foley.com
       rhanna@foley.com
       apence@foley.com

*Attorneys for Defendant/Counterclaim-Plaintiff Marks Studios, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KONAMI GAMING, INC., a Nevada corporation,<br><br>         Plaintiff,<br><br>    v.<br><br>MARKS STUDIOS, LLC d/b/a Gimmie Games, a Georgia limited liability company,<br><br>         Defendant. | Case No.: 2:14-cv-01485-JAD-CWH<br><br>**MOTION TO STRIKE OR IN THE ALTERNATIVE TO COMPEL AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Jury Trial Demanded** |

**MOTION TO STRIKE PLAINTIFF'S INFRINGEMENT CONTENTIONS, OR IN THE ALTERNATIVE TO COMPEL AMENDED CONTENTIONS COMPLIANT WITH PATENT LOCAL RULE 16.1-6**

**MEMORANDUM OF POINTS AND AUTHORITIES**

4835-3959-1969.4

## I. INTRODUCTION

Konami Gaming Inc. ("Konami") has failed in numerous respects to comply with the District of Nevada's Local Rules, which require a plaintiff to disclose the specific elements in a defendant's accused products that are alleged to infringe at the outset of litigation. Instead, Konami simply sets forth in one column the claim elements from each of the four patents-in-suit (U.S. Patent No. 8,096,869 ("'869 Patent"), U.S. Patent No. 8,366,540 ("'540 Patent"), U.S. Patent No. 8,622,810 ("'810 Patent"), and U.S. Patent No. 8,616,955 ("'955 Patent"). Konami then repeats nearly identical claim language in its two contention columns as part of a conclusory assertion that two of Marks Studios, LLC's ("Marks'") twelve products in issue somehow practice the stated limitation of the patent asserted. There is no factual analysis; virtually no effort to link the claim language with any functionality of the accused games, and no discussion of ten of the twelve accused games. In the few instances where Konami has cited specific elements from the Marks Studios games (primarily from language in the rules for the accused games), the cited language often bears little in any relation to the cited elements of the patents. (*See* infra section III(a).) Moreover, Konami has clouded this analysis even further with conclusory default allegations that regardless of whether Marks Studios' products infringe, they would still violate the doctrine of equivalents, a doctrine that applies, at best, in only rare instances to allow a patent owner to prove infringement even if every limitation of a patent claim is not exactly or literally met. (*Id.*)

As a practical matter, the current deficiencies in the infringement contentions significantly impede Marks Studios' ability to respond to them meaningfully as it is left to guess at the basis, if any, for the claims against it. If a more detailed analysis is not provided now, neither Marks Studios nor the Court will be able to assess the true merits of the case, rendering any future initial disclosures and claim construction arguments unenlightening and ultimately frustrating the purpose of the Local Rules. For this reason, Marks Studios has repeatedly requested that Konami clarify its initial contentions. Following several efforts to meet and confer, Konami provided one modest amendment, in which it partially satisfied Local Rule 16.1-6 by offering at least some additional support for its claims of *induced* infringement, but

4835-3959-1969.4

substantively it did nothing more than add several pictures (screen shots) of the accused games without any additional analysis. (Moskin Dec. ¶ 3; Ex. A.)  Additional meet and confer efforts following the service of the amended contentions have been unavailing. (Moskin Dec. ¶¶ 6-9; Exs. D, E.)  Indeed, Marks even provided Konami an essentially complete draft of this brief five days before filing this motion, yet Konami refused to modify its position or explain why. (Moskin Dec. ¶ 7; Ex. E.)

Finally, Konami has also improperly designated its infringement contentions as "Confidential" under the Protective Order in this case, notwithstanding that the contentions consist simply of published claims language from its own entirely public patents and summaries and pictures of Marks Studios' accused games as viewed in a public casino.  Despite repeated efforts by Marks Studios to resolve this incorrect designation under the protective order, Konami has not identified any confidential information in its contentions.  (Moskin Dec. ¶¶ 4, 5; Exs. B, C.)  Indeed, it appears to be determined to misuse the confidentiality designation solely to limit how Marks uses such entirely public information by requiring that it first disclose with whom it might wish to share it.

## II. UNDER THE LOCAL RULES, PLAINTIFFS MUST PROVIDE SPECIFIC AND DETAILED INFRINGEMENT CONTENTIONS

Local Rule 16.1-6 requires a plaintiff to serve infringement contentions that, among other things, identify every claim that the plaintiff alleges is infringed, identify with specificity the precise products that are accused of infringement, and describe on an element-by-element basis where or how each element of each asserted claim is practiced by the defendant's accused products, as well as whether the alleged infringement is direct or indirect, and, if so, whether the defendant possessed the requisite knowledge and intent. L.R. 16.1-6(a)-(d); *Vigilos LLC v. Sling Media Inc.*, No. C-11-04117 SBA (EDL), 2012 U.S. Dist. LEXIS 189491, at *3 (N.D. Cal. July 12, 2012) ("The purpose of the Local Rules is to crystallize a plaintiff's infringement contentions."); *InterTrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640 SBA, 2003 U.S. Dist. LEXIS 22736, at *2 (N.D. Cal. Dec. 1, 2003) ("The overriding principle of the Patent Local Rules is that they are designed to make the parties more efficient, to streamline the litigation

2

4835-3959-1969.4

process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims.").

In patent cases, the District of Nevada's Local Rules "require the parties to provide 'early notice of their infringement and invalidity contentions,' like the local patent rules for the Northern District of California." *Silver State Intellectual Techs., v. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155, 1161-62 (D. Nev. 2014) (quoting *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006) (discussing local patent rules for the Northern District of California)). The Local Rules "seek to balance the right to develop new information in discovery with the need for certainty as to legal theories." *JS Prods. v. Kabo Tool Co.*, No. 2:11-cv-01856-RCJ-GWF, 2014 U.S. Dist. LEXIS 36047, at *11 (D. Nev., Mar. 19, 2014) (quoting *O2 Micro Int'l Ltd*. at 1366). The infringement contention requirements of the Local Rules are designed reduce the cost of patent litigation by ensuring that plaintiffs do not allege infringement upon mere suspicions. As the Federal Circuit has explained:

> A patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs – precisely the scenario Rule 11 contemplates. Performing a pre-filing assessment of the basis of each infringement claim is, therefore, extremely important. In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement.

*View Engineering, Inc. v. Robotic Vision System, Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Accordingly, the Local Rules require specific and detailed infringement contentions to ensure that plaintiffs clearly articulate their infringement positions before the Court and opposing party have expended needless time and resources.

### III. KONAMI'S INFRINGEMENT CONTENTIONS SHOULD BE STRICKEN FOR FAILURE TO COMPLY WITH THE LOCAL RULES

In violation of the letter and spirit of the Local Rules, Konami's Supplemental Infringement Contentions ("IC") leaves Marks Studios' guessing as to Konami's basis for accusing it of infringement. Konami's IC fail to identify with any specificity where each element of each asserted claim is found within any Marks Studios' product, as required by Local

3

Rule 16.1-6(c).  *See Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) ("… [the patent holder] must map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction.").  Proof of patent infringement requires a showing that each element of each limitation of a claim be satisfied.  It is a demanding and highly specific requirement.  For this reason, vague and conclusory contentions are particularly inadequate. *Networking Caching Technology v. Novell, Inc.*, No C-01-2079-VRW, 2002 U.S. Dist. LEXIS 26098, at *20-21 (N.D. Cal. Aug. 13, 2002) (requiring further detail where infringement contentions were "replete with vague discussions of the claim terms" and merely "mimic[ked] the language of the claim").  Furthermore, to escape the strict requirements of proving literal infringement, Konami inappropriately attempts to assert claims under the doctrine of equivalents with blanket statements in violation of Rule 16.1-6(e).  A party asserting infringement must identify "whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." L.R. 16.1-6(e).  This requires a specific analysis on an element-by-element level that connects the defendant's products to the claims.  Conclusory statements and screenshots do not meet this requirement without more.  *See Droplets, Inc. v. Amazon.com, Inc.*, No. C12-03733 HRL, 2013 U.S. Dist. LEXIS 53211, at *11 (N.D. Cal. Apr. 12, 2013) ("Without the aid of labels or some other indication of how the screenshots connect to the limitations, the infringement contentions fail to provide the factual basis of the contentions.").  Marks Studios should not have to guess how its products may or may not be alleged to satisfy the claim limitations as contended because that would require doing Konami's infringement analysis for them.

Accordingly, Konami's infringement contentions should be stricken and it should be required to comply with the Local Rules in redrafting its contentions. *See Vigilos*, 2012 U.S. Dist. LEXIS 189491 at *20 (granting defendant's motion to strike with leave to amend given plaintiff's failure to comply with [N.D. Cal's] Patent Local Rule 3-1 [identical language to Nevada L.R. 16.1-6]); *Theranos, Inc. v. Fuisz Pharma LLC*, Nos. 11-cv-05236-YGR and No. 12-cv-03323-YGR, 2012 U.S. Dist. LEXIS 172160, at *21 (N.D. Cal. Nov. 30, 2012) (granting a motion to strike when the patent holder's contentions did not provide the level of detail required

4

1  by Patent Local Rule 3-1 or provide fair notice of the nature of the infringement claims alleged);
2  *Networking Caching Technology*, 2002 U.S. Dist. LEXIS 26098, at *20-21 (granting a motion to
3  strike preliminary infringement contentions for noncompliance with Patent Local Rule 3-1,
4  granting plaintiff leave to serve amended disclosures, and staying all discovery until plaintiff
5  serves amended disclosures).

While it would be overly burdensome to catalog every deficiency, the specific examples recited below are illustrative of the deficiencies that pervade Konami's ICs.

### a. Konami's ICs are deficient under L.R. 16.1-6 (b) & (c)

A party must serve a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." L.R. 16.1-6(c). Rather than attempt to show how each of thirteen different Marks Studios' games (the "accused instrumentalities") infringe, Konami broadly alleges only that the "Golden Amulet" and "Thunder Queen" game are representative of all the products. Even if this could satisfy Konami's obligations under L.R. 16.1-6(c), Konami's claim chart does not indicate where or how each and every element of the claim can be found in either of the two cited products.

The party asserting infringement must identify how each "accused apparatus, product, device, process, method, act or other instrumentality… of each opposing party is infringing each separate claim." L.R. 16.1-6(b). Of the more than 40 claims Konami identifies in its IC, it has failed to chart a single such claim to satisfy this requirement. Rather, nearly all of Konami's contentions are flawed for two general reasons. First, a number of the contentions merely repeat the claim language in a conclusory fashion without even alluding to any specific features of Marks Studios' products, making it impossible for Marks Studios to determine how the accused products infringe the patents-in-suit. Second, for many of the remaining elements, Konami fails to connect its evidence to the claim language. Marks Studios should not be required to make inferences or assumptions about how its products may or may not satisfy the claim limitations as this is the responsibility of the party alleging infringement. In fact, for many of the contentions in this second category, the contention does not even bear a rational relation to the claim

5

1  language, frustrating Marks Studios ability to make even an educated guess as to Konami's
2  position.
3        Exemplifying how Konami's contentions merely parrot the claim language without
4  identifying specific features of the accused products, among the limitations of Claim 1[c] the
5  '869 patent is a requirement that a gaming machine have, *inter alia*, a "matrix of symbol
6  containing elements" in which there is at least one column "comprising a portion of a simulated
7  rotatable reel of a plurality of said symbol containing elements."  Despite providing a list of
8  definitions, the key term "symbol containing elements" (which is essential to all four Konami
9  patents in suit) is undefined and undisclosed and Marks Studios is not clear how it is alleged to
10 satisfy this limitation.  Moreover, the term "symbol containing elements" is used differently from
11 the term "symbol" on the face of the patent itself, and hence must be understood to mean
12 something different.  This is particularly so in the context of modern slot machine games, such as
13 those encompassed by the four Konami patents, in which there are only virtual reels, not physical
14 reels with rigid slots or placeholders to insert symbols  Yet, after showing a picture of the two
15 supposedly exemplary accused games and stating that each has a matrix of three rows and five
16 columns, each containing a symbol, Konami simply parrots the language of the claim limitation
17 in stating that "Each of the five columns comprises a portion of a simulated rotatable reel of a
18 plurality of said symbol containing elements."  (Moskin Dec. Ex. A, p. 7.)
19       Similarly, Claim 1[b] of the '540 patent contains a requirement that the gaming machine
20 have, *inter alia*, at least one column "comprising a portion of a simulated rotatable reel of a
21 plurality of said symbol containing elements."  Yet, Konami's IC simply parrots this language,
22 stating with no illustration or explanation that "each of the displayed five columns [of the two
23 Marks Studios games] comprises a portion of a simulated rotatable reel of a plurality of said
24 symbol containing elements." (*Id.* p. 17.)  No symbol containing elements or simulated rotatable
25 reels are shown.
26       The following is a more complete list of claim elements for which Konami merely recites
27 conclusory allegations without mentioning how Marks Studios' products infringe the asserted
28

6

1  claims (*see* Ex. A): '869 patent: 1[a], 1[c], 7; '540 patent: 1[b], 4, 9, 16; '810 patent: 1[a], 1[c],
2  1[g], 8[b], 8[h], 15[c], 15[g]; '955 patent: 19[b].

3        Second, much of the allegedly infringing material cited in Konami's IC has no apparent
4  logical relationship to the claim elements cited, or Konami has responded to the limitations with
5  a repetitive, unrelated, or even contradictory assertion. Konami repeats the same generic
6  description for each element of the claim without determining if the claim limitation is supported
7  by the evidence. The following chart identifies specific deficiencies in Konami's contentions.
8  To avoid repetition, any deficiencies found in more than one of the patents-in-suit are only
9  identified once. Also for efficiency, the chart only discusses Konami's contentions regarding the
10 Golden Amulet game, but applies to their contentions regarding the Thunder Queen game (*see*
11 Ex. A). (As noted, there simply is no separate discussion of the other ten accused games.)

12       For example, the same term "symbol containing element" appears in the following
13 limitation of Claim 1: that "said simulated rotating reel comprising sections of symbol containing
14 elements displaying a plurality of symbols that are fixed for each game played on said gaming
15 machine." This language suggests that symbol containing elements can display a plurality of
16 symbols (thus also confirming that "symbol containing elements" are not merely "symbols") and
17 also suggests the symbols must be fixed as part of the game. Yet, pointing to Marks' games to
18 show where this limitation is met, Konami simply notes that the game rules for "Golden Amulet"
19 state that "at the start of each … game, a stack consisting of only one of the following symbols is
20 randomly added to the reel strip." The rules say nothing about symbol containing elements,
21 referring instead only to specific symbols; and the rules say that the symbols are randomly
22 generated, not that they are fixed. Hence, the cited materials from Marks games appears
23 unrelated to or even directly at odds with the stated limitation. Other such examples follow.

24       **'869 Patent**

| Claim | Claim language | Contention re: Golden Amulet | Deficiency |
|---|---|---|---|
| 1[d] | . . . said simulated rotating reel comprising sections of symbol containing | Game rules state, "At the start of each Golden Amulet game, a stack consisting of only one of | This contention does not describe how the stack is related to the simulated rotating reel. It also does not address |

7

| | | | |
|---|---|---|---|
| | elements displaying a plurality of symbols that are fixed for each game played on said gaming machine; | the following symbols is randomly added to the reel strips." | "displaying a plurality of symbols that are fixed for each game." In fact, the language cited provides that "a stack consisting of <u>only one</u> of the following symbols is added to the reel strips." (not a plurality) |
| 1[g] (Compare to 1[f] where identical evidence is presented and appropriate] | . . . wherein said identical symbol is selected by virtually spinning a notional, non-visible inner reel comprising a subset of said plurality of symbols. | Game rules state, "At the start of each Golden Amulet game, a stack consisting of only one of the following symbols is <u>randomly</u> added to the reel strips." | This contention does not show how the identical symbol is selected (a vital element in the claimed invention). It does not show or provide information about virtually spinning the notional, non-visible reel or how a random selection constitutes such an action. It also does not show that the inner reel is comprised of a subset of a plurality of symbols. It simply provides that a stack is randomly added to the reel strips and that there are simulated rotating reels.<br><br>*See also* '540 Patent, claim 7. |
| 2 | The gaming machine of claim 1 wherein said identical symbol is selected by the processor from the subset of said plurality of symbols. | Game rules state, "At the start of each Golden Amulet game, a stack consisting of only one of the following symbols is <u>randomly</u> added to the reel strips." | In this contention, the "Game rules…" language is used again, but there is no discussion of a processor selecting the identical symbol in the games. There is no discussion at all about how the identical symbol is selected. From the language provided, the identical symbol is simply added randomly.<br><br>*See also* '540 Patent, claim 2. |
| 4 | The gaming machine of claim 2 wherein said game controller selects one potential winning symbol containing element from said simulated rotatable reel | Thirty different paylines are defined, each of which selects one potential winning symbol containing element from the simulated rotatable reel. | Here, the supporting contention does not describe "a game controller." Rather, the text states that 30 different paylines, where the paylines select the winning symbol. Konami points to no evidence that there is a game controller in Marks |

8

4835-3959-1969.4

| | | | |
|---|---|---|---|
| | | | Studios' products that selects the winning symbol or how any of this language regarding paylines even relates to a game controller.<br><br>*See also* '540 Patent, claim 4; '810 Patent, claims 2 and 8[i]; '955 patent, claims 1[f], 1[g], and 13. |
| 19[g] | …such that all other remaining symbol containing elements of said simulated rotatable reel are populated with fixed symbols from the plurality of symbols for each play of the game; and | Game rules state, "At the start of each Golden Amulet game, a stack consisting of only one of the following symbols is randomly added to <u>the reel strips</u>." | Using the "Game rules…" language, Konami fails to show how the other symbol containing elements are populated with the fixed symbols. Rather the "Game rules…" language only discusses how a stack of one symbol is randomly added. There is no evidence showing what happens with the other symbol containing elements.<br><br>*See also* '540 patent, claim 22. |
| 19[h] | …wherein said subset of said plurality of symbols is arranged on a notional non-visible inner reel, such that said identical symbol is randomly selected anew for each play of the game by virtual rotation of said notional non-visible inner reel. | Game rules state, "At the start of each Golden Amulet game, a stack consisting of only one of the following symbols is <u>randomly</u> added to the reel strips." | The "Game rules…" language is used again without referencing any inner reel in Marks Studios' products. This contention also fails to point out how the one symbol is selected by rotation of the inner reel.<br><br>*See also* '540 patent, claim 23. |

**'540 Patent**

| Claim | Claim language | Contention re: Golden Amulet | Deficiency |
|---|---|---|---|
| 1[e] | …wherein a second identical symbol is randomly selected, and wherein the first identical symbol is replaced by the second | Game rules state, "<u>At the start of each Golden Amulet game</u>, a stack consisting of only one of the following symbols is randomly added to the | The "Game rules…" language cited does not provide that a first identical symbol is replaced by a second identical symbol in said "consecutive run of two or more said symbol |

9

4835-3959-1969.4

| | | | |
|---|---|---|---|
| | identical symbol in said consecutive run of two or more of said symbol containing elements, said second identical symbol being used for a second play of the game | reel strips." | containing elements." It does not even describe a second identical symbol.<br><br>*See also* '540 patent, claim 21[c]; '810 patent, claims 1[d], 8[i], and 15[h]. |
| 10 | The gaming machine of claim 9 wherein each symbol containing element of at least one section of a consecutive run of two or more of said symbol containing elements of each of said simulated rotatable reels two, three, four and five is adapted for potential modification from said default random selection of said plurality of symbols to said first or second identical symbol. | Game rules state, "At the start of each Golden Amulet game, a stack consisting of only one of the following symbols is randomly added to the reel strips."<br><br>It was observed during game play that each stack contained at least three consecutive, identical symbols, which was sequentially displayed within the rows of the video screen. | Konami does not provide any indication of whether the simulated rotatable reels are "adapted for modification from said default random selection of said plurality of symbols"<br><br>*See also* '540 patent, claim 26. |

**'810 Patent**

| Claim | Claim language | Contention re: Golden Amulet | Deficiency |
|---|---|---|---|
| 1[b] | …the reel having a predetermined number of symbol positions, wherein each symbol position has an associated symbol from a set of symbols. | The game utilizes five reels; each with a predetermined number of symbol position, and each symbol position has an associated symbol taken from a set of twelve pay symbols. | Konami provided a screen shot of the Marks Studios' game, which appears to show symbols on the five standard reels. However, this picture does not identify any symbols positions or any predetermined symbol positions.<br><br>*See also* '955 patent, claim 1[a]. |

10

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

4835-3959-1969.4

|   |   |   |   |
|---|---|---|---|
|   |   |   |   |

### '955 Patent

| Claim | Claim language | Contention re: Golden Amulet | Deficiency |
|---|---|---|---|
| 1[h] | …wherein the display device is configured to indicate to the player that the symbols associated with the run of consecutive symbol positions are being replaced with the identical replacement symbol, while the reel is spinning | During a first instance of game play, a stack of a first symbol was seen during reel spin.<br><br>During a second instance of game play it was seen that the first stack symbol had been replaced by a second stack symbol. | There is no indication whether the replacement of the stack was indicated to the user or whether the replacement occurred while the reel was spinning.<br><br>*See also* '955 patent, claim 10[f], 19[h], and 19[i]. |

Konami's conclusory and insufficient contentions do not articulate the precise way in which the Accused Products (or even the two accused products from the larger list of twelve in the complaint) are alleged to infringe the asserted claims as required by Local Rule 16.1-6(b) & (c). The contentions thus should therefore be stricken and Konami directed to serve an amended set complying with the Local Rules. Konami's inability to provide sufficient detail about its infringement position suggests that it did not conduct a reasonable inquiry prior to filing suit. Laying aside that it is plaintiff's burden to establish infringement, it would be unhelpful to the parties or the Court for Marks Studios simply to guess how it is alleged to satisfy the cited limitations of the claims in suit. Nor can Marks be expected to guess how the differing

11

4835-3959-1969.4

functionalities of its ten accused games not even mentioned in Konami's IC are alleged to infringe. *See, e.g., Essociate, Inc. v. 4355768 Can. Inc.*, SACV 14-0679 JVS, 2015 U.S. Dist. LEXIS 18568, at *8 (C.D. Cal., Jan. 14, 2015) (plaintiff "put the cart before horse" when it bundled together products that have the potential to be non-infringing with a product it allegedly knew to be infringing); *Vigilos LLC v. Sling Media Inc.*, No. C-11-04117 SBA, 2012 U.S. Dist. LEXIS 189491, at *16-17 (N.D. Cal., July 12, 2012) ("Although representative claim charts may be used in the appropriate case, Plaintiff has the burden of establishing that the products in the claim charts are representative of all the accused products.") As such, and particularly while the case is still at its inception, Konami's IC should be stricken and it should be required to serve a proper set of contentions that comply with the local rules.

### b. Konami's IC Improperly Attempts to Reserve the Right to Allege Infringement Under the Doctrine of Equivalents Without Complying with L.R. 16.1-6(e)

Konami's blanket reservation of a right to claim infringement under the doctrine of equivalents is improper. L.R. 16.1-6(e) requires a plaintiff to identify "whether <u>each limitation</u> of <u>each asserted claim</u> is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." L.R. 16.1-6(e). A party asserting infringement under the doctrine of equivalents must provide a specific analysis, on an element-by-element basis, as to its theory of why there is an infringement under the doctrine.

Courts applying the identical rules repeatedly have found that such blanket statements are unacceptable. *See e.g.*, *Essociate Inc. v. 4355768 Can. Inc.*, No. SACV 14-0679 JVS (DFMx), 2015 U.S. Dist. LEXIS 18568, at *15 (C.D. Cal. Jan. 14, 2015) ("the doctrine of equivalents 'is not designed to give a patentee a second shot at proving infringement" if a claim element is found not to directly infringe"); *GN Resound A/S v. Callpod, Inc.*, No: C 11-04673 SBA, 2013 U.S. Dist. LEXIS 40402, at *5-6 (N.D. Cal. Mar. 21, 2013) (finding that "Plaintiff's blanket statements of infringement under the doctrine of equivalents was insufficient to satisfy Rule 3-1(e)"); *Implicit Networks, Inc. v. Hewlett-Packard Co.*, No. C 10-03746 SI, 2011 U.S. Dist. LEXIS 100283, at *11-12 (N.D. Cal. Sept. 7, 2011) ("The Court agrees that [plaintiff] cannot simply recite the doctrine of equivalents in its cover pleading to its claim charts without

12

1  providing specific analysis, on an element-by-element basis, as to its theory of why there is
2  infringement under the doctrine of equivalents."); *Optimumpath, LLC v. Belkin Int'l, Inc.*, No. C
3  09-01398 CW, 2011 U.S. Dist. LEXIS 41634, at *25 (N.D. Cal. Apr. 12, 2011) (finding that
4  "judges of this court have rejected plaintiffs' attempts to assert claims under the doctrine of
5  equivalents with blanket statements").

6        In *Essociate,* the Central District of California struck a defendant's infringement
7  contentions where, as here, it attempted to reserve "in the alternative that the Accused
8  Instrumentalities embody [the claim elements] under the doctrine of equivalents." 2015 U.S.
9  Dist. LEXIS at *15.  Similarly, Konami has alleged that each element of the Asserted Claim is
10  literally present, but also contend in the alternative that "if there are any differences between the
11  claim elements and each Accused Instrumentality, the differences are insubstantial and each
12  Instrumentality would therefore infringe under the Doctrine of Equivalents."  This reservation is
13  improper and accordingly should be stricken.  (Moskin Dec. Ex. A p. 9.)

14        **c.  Konami's IC Is Improperly Designated Confidential**

15        The protective order entered in this case provides that the parties can designate as
16  "Confidential" only material "that contains or reflects confidential, proprietary, or commercially
17  sensitive information including information not readily available to the general public."  (D.I. 27
18  at 2.)  The parties exchanged a series of e-mails regarding Konami's assertion that the IC is
19  "Confidential" and Konami was unable to identify any information in its IC that is not readily
20  available to the public.  (Moskin Dec. Ex. B, C.)  The parties also participated in a meet and
21  confer on February 11, 2015, where again Konami was unable to identify a confidential basis for
22  its designation.  (*Id.* ¶¶ 4, 5.)  Moreover, in connection with its original IC, which had been
23  improperly designated "confidential – attorneys' eyes only," Konami admitted in a January 21,
24  2015 e-mail that the materials were not confidential.  (*Id.* Ex B.)  Konami's refusal to de-
25  designate the IC as non-confidential thus requires a court order pursuant to Section VI(c) of the
26  Protective Order.  Konami should not be permitted to abuse the protections of the Protective
27  Order simply as a pretext for requiring Marks Studios to disclose to whom it might wish to show
28

13

4835-3959-1969.4

entirely public documents and information such as these. Accordingly, Konami's IC should be struck for its incorrect "Confidential" designation.

## IV. CONCLUSION

For the foregoing reasons, Marks Studios respectfully requests that Konami's Supplemental Disclosure of Asserted Claims and Infringement Contentions for the '869, '540, '810, and '955 patents be stricken and that Konami be directed to serve, within 20 days, proper infringement contentions that comply with Local Rule 16.1-6 by (i) citing with particularity where in the accused products each of the claim limitations for each asserted claim exists for each of the twelve products in suit; (ii) providing an element-by-element explanation for any infringement asserted under doctrine of equivalents; and (iii) removing the "Confidential" designation from its contentions.

Dated: March 11, 2015

Respectfully submitted,

 /s/ Jason D. Smith
Nicholas J. Santoro (Nevada Bar No. 532)
Jason D. Smith (Nevada Bar No. 9691)
SANTORO WHITMIRE
10100 West Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
P: (702) 948-8771
Email: nsantoro@santoronevada.com
          jsmith@santoronevada.com

Jonathan E. Moskin, Esq. (admitted *pro hac vice*)
Akiva Cohen, Esq. (admitted *pro hac vice*)
Ramy Hanna, Esq. (admitted *pro hac vice*)
Adam Pence, Esq. (admitted *pro hac vice*)
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016-1314
P: (212) 682-7474
Email: jmoskin@foley.com
          acohen@foley.com
          rhanna@foley.com
          apence@foley.com

*Attorneys for Defendant/Counterclaim-Plaintiff Marks Studios, LLC*

SANTORO WHITMIRE
10100 W. Charleston Blvd., Suite 250, Las Vegas, Nevada 89135
(702) 948-8771 – fax (702) 948-8773

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 11th day of March 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification to the following counsel of record in this matter:

Kimberly P. Stein
HOWARD & HOWARD ATTORNEYS PLLC
Wells Fargo Tower, Suite 1000
3800 Howard Hughes Parkway
Las Vegas, Nevada  89169
Email:  kstein@howardandhoward.com

Patrick M. McCarthy, Esq.
(Michigan Bar. No. P49100)
(admitted *pro hac vice*)
One North Main Building, Suite 410
101 North Main Street
Ann Arbor, Michigan  48104-1475
Email:   pmccarthy@howardandhoward.com

 Kristopher K. Hulliberger
(Michigan Bar. No. P66903)
(admitted *pro hac vice*)
HOWARD & HOWARD ATTORNEYS PLLC
450 W. Fourth Street
Royal Oak, Michigan 48067
Email: kkh@h2law.com

*Attorneys for Plaintiffs*

/s/ *Rachel Jenkins*
Santoro Whitmire

4835-3959-1969.4