1

2

3          UNITED STATES DISTRICT COURT

           DISTRICT OF NEVADA

4    KONAMI GAMING, INC., a Nevada                     No. 2:14-CV-01485-JAD-CWH
     corporation,
5                                                      **Order for supplemental briefing**
              Plaintiff
6
     v.
7
     MARKS STUDIOS, LLC d/b/a Gimmie
8    Games, a Georgia limited liability company,

9             Defendant

10

11          After reviewing the parties' briefs and considering their detailed oral arguments, I find that

12   supplemental briefing on two narrow issues may aid me in making my decision.  These issues both

13   relate to whether the term "game controller" is indefinite as it is used in U.S. Patent Nos. 8,622,810

14   and 8,616,955.  The first issue is whether game controller is a means-plus-function claim; the second

15   is whether—assuming it is a means-plus-function claim—the patents disclose a corresponding

16   structure for this term.

17          The claim term "game controller" does not include the word "means," creating a rebuttal

18   presumption that this is not a means-plus-function claim.  But in *Williamson v. Citrix Online, LLC*,

19   the Federal Circuit rejected the prior rule that there is a "strong" presumption against applying the

20   means-plus-function test to claim terms that are missing the word "means."[1]  In light of *Williamson,* I

21   must simply ask whether "the words of the claim are understood by persons of ordinary skill in the

22   art to have a sufficiently definite meaning as the name for structure."[2]  If not, the means-plus-

23   function test applies.

24          The defendant in *Williamson* argued that the term "distributed learning control module"

25

26   _____

27   [1] *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015).

28   [2] *Id.*

Page 1 of 6

should trigger means-plus-function analysis despite that the term did not include the word "means."[3] The Federal Circuit's analysis offers several guiding principles that I find useful in our case.

First, the court found persuasive the fact that the claim term was drafted in the "same format" as a means-plus-function claim.[4]  The court pointed out that one could easily replace "distributed learning control module" with the word "means" because the patent taught that the module simply performs several functions.[5]  In other words, the claim term set forth "the same black box without recitation of structure for providing the same specified function as did 'means.'"[6]

The court effectively acknowledged that "distributed learning control module" was a "generic term" for a programmable processor of some sort—but this was not enough to avoid the means-plus-function analysis.[7]  The court first noted that there was some indication that a distributed learning control module was a structure.[8]  The claim terms indicated that the module was some sort of programmable processor that carried out computer-related functions.[9]  And the written description of the patent "described in a certain level of detail" how the distributed learning control module worked.[10]  The description explained that the module "controlled the interactions between the other modules and the various presenter and audience computer systems" and "authenticat[ed] the presenter."[11]  In other words: the written description made clear that the "distributed learning control

---

[3] *Id.*

[4] *Id.*

[5] *Id.* at 1350

[6] *Id.*

[7] Granted, "module" may be even more generic (and have a richer history of use as a nonce word in patent law) than the "controller" term at issue in this case.  But I am not persuaded that "distributed learning control module" is any more or less generic than "game controller."

[8] *Id.* at 1351.

[9] *Id.*

[10] *Id.*

[11] *Id.*

1   module" is some sort of processor with memory that can be programmed to carry out the computer-

2   related functions stated in the patent.  But the Federal Circuit emphasized that even disclosing the

3   functions of this processor module was not enough to "inform the structural character of the

4   limitation-in-question or otherwise impart structure to the term."[12]

5   　　　The Federal Circuit was also unmoved by the plaintiff's expert, who testified that a

6   distributed learning module was a well-known structure in the field.[13]  The court even acknowledged

7   that the plaintiff's expert opined that "one of ordinary skill in the art, reading the specification,

8   []would know exactly how to program a computer to perform the recited functions."[14]  But that still

9   was not enough.

10   　　　In the wake of *Williamson,* courts have been more willing to apply the means-plus-function

11   test to generic claim terms—including terms not too different from "game controller."  A District of

12   Arizona judge found that a claim's use of  "processor" was not definite enough because it did "not

13   convey to a skilled artisan anything about the internal components, structure, or specific operation of

14   the processor."[15]  Similarly, a Northern District of California court recently held that the term

15   "program that can operate the movement of the pointer" was a means-plus-function claim because

16   simply stating that a program will carry out a function does not disclose *how* it will do so (i.e., how

17   the software will be programmed).[16]

18   　　　The Southern District of New York recently reached a similar conclusion on facts even more

19   similar to ours.[17]  The court held that a "computer application" used to carry out functions was not a

20

21   [12] *Id.*

22   [13] *Id.*

23

24   [14] *Id.* at 1351.

25   [15] *GoDaddy.com, LLC v. RPost Commc'ns Ltd.,* No. CV-14-00126-PHX-JAT, 2016 WL 212676, at *56–57 (D. Ariz. Jan. 19, 2016).

26

27   [16] *Zeroclick, LLC v. Apple Inc.,* No. 15-CV-04417-JST, 2016 WL 5477115, at *4 (N.D. Cal. Aug. 16, 2016).

28   [17] *Verint Sys. Inc. v. Red Box Recorders Ltd.*, 166 F. Supp. 3d 364, 379–80 (S.D.N.Y. 2016).

sufficient structure.  The court acknowledged that a computer application refers to a structure generally—"a collection of software components used to perform specific types of user-oriented work on a computer"—but that this term failed "to provide sufficient additional structure that would not otherwise be implicitly understood if the were defined as 'means for performing' the aforementioned computer-implemented functions."[18]  The court went on to note that the Federal Circuit commonly interprets means claims to cover software on a computer: "in many of the Federal Circuit cases interpreting 'computer-implemented means-plus-function claims' the court understood the means claimed to be software executed by a computer. . . . The fact that the 'means for' language was already understood by the court to implicitly refer to a sub-class of MPF claims composed of two structural elements—programs executed by a microprocessor—makes clear that explicitly claiming a 'computer application' does not add sufficiently definite structure."[19]

*Williamson* and its progeny teach at least three lessons relevant here: (1) claim terms written in the means-plus-function format are more likely to be means-plus-function claims; (2) terms can refer to a general structure for processing, or a computer with software for processing—and even state functions these generic structures will carry out—and still be indefinite; and (3) the "[t]he fact

---

[18] *Id.*

[19] *Id.; see also Farstone Tech., Inc. v. Apple Inc.,* No. 813CV1537ODWJEMX, 2015 WL 5898273, at *3 (C.D. Cal. Oct. 8, 2015), aff'd, No. 2016-1210, 2016 WL 4373676 (Fed. Cir. Aug. 16, 2016) ("Although the specification describes the 'backup/recovery module' as within the hardware resource of the processing system, the specification fails to impart any structural significance to the term.  Furthermore, regarding the declaration by Farstone's expert, Dr. Kaliski, that a person of ordinary skill in the art would understand the structure of backup/recovery module, *Williamson* reiterated that the fact that one of skill in the art could program a computer to perform the recited functions cannot create structure where none otherwise is disclosed. . . . Dr. Kaliski's declaration, like the claim language and specification, fails to describe how the backup/recovery module creates recovery units as part of the processing system. Instead, Dr. Kaliski tries to apply the structural elements of the processing system to the backup/recovery module.  Therefore, the Court finds that this limitation is subject to the provisions of § 112, ¶ 6."); *Voice Domain Techs., LLC v. Apple Inc.,* No. CV 13 40138 TSH, 2015 WL 4638577, at *7 (D. Mass. Aug. 4, 2015) ("'[C]oupling mechanism for providing said microphone signal, said command notification signal, said data notification signal and said cursor signal to said processing system.'  This format is 'consistent with traditional means-plus-function claim limitations,' because it replaces the word 'means with 'mechanism,' and recites a function to be performed by the 'coupling mechanism.'").

1  that one of skill in the art could program a computer to perform the recited functions" is not enough

2  to save a term from being treated as a means-plus-function claim.

3       Here, Konami's patents appear to use the term "game controller" within claim language

4  structured as a means-plus-function claim: "a game controller *configured to* initiate the instance of

5  the game"; "the game controller being further *configured to* replace each of the symbols."[20]

6  Replacing "game controller" with "computer-implemented means"—leaves us with the same sort of

7  "black box" for carrying out functions with a processor, without any definite structure.[21]

8       Further, Konami has effectively conceded that the "game controller" is a generic term for a

9  computer processor with memory and inputs and outputs that can be programmed to carry out

10  computer-related functions.  And this is precisely the sort of "computer means" that courts have held

11  are effectively means-plus-function claims.  Konami acknowledged in its briefing that the game

12  controller corresponds to the "control module" described in the patent's description, and that this

13  module includes "a microprocessor, a working memory and a data storage device connection

14  means."[22]  Konami's expert, Mr. Acres, opines that "the term 'game controller' was widely used to

15  refer to a processor and memory subsystem."[23]  Acres testified that any experienced person in the

16  field could easily program a computer to carry out the functions for the game controller—but as I

17  explained above, the Federal Circuit rejected that approach in *Williamson*.[24]  And Acres leaves no

18  doubt that a "game controller" refers to programmable processors generally, and that a person in the

19  relevant field would not associate the term with any specific processor or software.[25]

---

20

21  [20] U.S. Patent No. 8,616,955 (claim 1).

22  [21] *Williamson*, 792 F.3d at 1349.

23  [22] ECF No. 129 at 15.

24  [23] ECF No. 133-1 at ¶ 9.  Mr. Crevelt, Marks's expert, also opined that "a person of ordinary skill
25  would understand that any programmable computer device could meet this description."  ECF No.
  130-3 at ¶ 53.

26
  [24] ECF No. 133-1 at ¶ 18.
27

28  [25] *Id.* Acres explains that, at the time of the patent, several different operating systems and
  programming languages were used in gaming machines.

1    The term "game controller" thus appears to trigger means-plus-function analysis.  And if that

2 is so, it appears that the patents here do not disclose a sufficient algorithm or specific structure for

3 carrying out the patents' programmable functions.[26]

4    Because the parties did not adequately brief these questions, I find that additional briefing

5 may help me in reaching my claim-construction decision.  The briefing should address *only* the two

6 following questions: (1) why is the term "game controller" not a means-plus-function claim,

7 particularly in light of *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1351 (Fed. Cir. 2015) and

8 the other decisions cited in this order; and, (2) if this term is a means-plus-function claim, what

9 corresponding structure is provided in the relevant patents?

10                                            **Conclusion**

11    Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the parties

12 shall file supplemental briefing as requested above.  Konami is ordered to file an opening brief of no

13 more than ten pages by November 18, 2016.  Marks is ordered to file a response brief of no more

14 than ten pages by December 2, 2016.  No further briefing is authorized.  Requests for page-limit

15 extensions will be summarily denied.

16    Dated November 7, 2016

17

18    _____
      Jennifer A. Dorsey
      United States District Judge

19

20

21

22

23

24

25 ──────────────

26 [26] *See, e.g., Twin Peaks Software Inc. v. IBM Corp.,* No. 14-CV-03933-JST, 2016 WL 1409748, at
    *12 (N.D. Cal. Apr. 11, 2016) ("Nor does the specification provide the arguments each operation
27 may require such that one of ordinary skill in the art could accomplish the other operations. The
    specification does not disclose sufficient defining structure, through code and prose, to render the
28 bounds of the claim understandable to one of ordinary skill in the art.").